IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT GRANT SAMOL, )
)
    Plaintiff, )
)
-vs- ) Civil Action No. 18-1501
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Robert Grant Samol ("Samol") applied for supplemental security income in April 2016 alleging disability beginning October 15, 2012. (R. 15).[1] He alleged disability based upon both physical and mental impairments beginning in October 2012. (R. 15) He was represented by counsel at a hearing before an Administrative Law Judge ("ALJ"), during which both he and a vocational expert ("VE") appeared and testified. (R. 15) Ultimately, the ALJ denied benefits and the Appeals Council denied Samol's request for review. He then filed this appeal. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 8 and 10. For the reasons below, the ALJ's decision is vacated and the decision is remanded for further consideration.

---

[1] Samol filed two prior disability claims, each of which was denied. (R. 67, 168) The ALJ issued an unfavorable decision on the more recent of these claims on July 29, 2014. (R. 67) Consequently, although Samol contends that his onset date is October 15, 2012, the period at issue for this appeal is July 29, 2014 through January 4, 2018 (the date of the ALJ's decision in this case).

1

**Opinion**

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was

rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

The ALJ denied Samol's claim for benefits. More specifically, at step one, the ALJ found that Samol has not engaged in substantial gainful activity since April 5, 2016, the application date. (R. 17) At step two, the ALJ concluded that Samol suffers from the following severe impairments: narcolepsy with cataplexy, headaches, degenerative disc disease, mood disorder, and somatic symptom disorder. (R. 17) She considered several other impairments but found them to be non-severe. (R. 17-18) At step three, the ALJ determined that Samol does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20) Between steps three and four, the ALJ decided that Samol has the residual functional capacity ("RFC") to perform less than sedentary work with certain restrictions. (R. 20-25) At step four, the ALJ found that Samol cannot perform his past relevant work. (R. 25) At the fifth step of the analysis, the ALJ concluded that, considering Samol's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that he can perform. (R. 26-27)

3

III. Discussion

1. Severe Impairment

The ALJ determined that Samol suffered from several severe impairments at the second step of the analysis. Even so, Samol urges that the ALJ erred in failing to find that his anemia, chronic fatigue, migraines, neuralgia and monoclonal gammopathy similarly qualified as severe impairments. *See* ECF Docket No. 9, p. 9. The ALJ evaluated Samol's assertions related to these conditions but rejected them because these conditions had been responsive to treatment, caused no more than minimally vocationally relevant limitations, were not expected to last for more than 12 months, or had not been properly diagnosed by an acceptable medical source. (R. 17-18) Substantial evidence supports the ALJ's decision in this regard. (R. 17-18) Consequently, I find no basis for remand.

Even accepting Samol's position as correct for purposes of argument, such an error would have been harmless because the ALJ found that Samol did suffer from impairments which qualified as "severe." The ALJ found that Samol suffered from the severe impairments of narcolepsy with cataplexy, headaches, degenerative disc disease, mood disorder, and somatic symptom disorder. In other words, the ALJ did not end the analysis at the second step. *See Salles v. Comm'r. of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) (stating that, "[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Roberts v. Astrue*, Civ. No. 8-625, 2009 U.S. Dist. LEXIS 91559, at * 5 (W.D. Pa. Sept. 30, 2009) (finding that, "[e]ven assuming

that the ALJ failed to include all of the Plaintiff's severe impairments at step two, this would be harmless error, as the ALJ did not make his disability determination at this step. Indeed, remand would not affect the outcome of this case and is not warranted."); and *Bliss v. Astrue*, Civ. No. 8-980, 2009 WL 413757 (W.D. Pa. Feb. 18, 2009) (stating that, "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe …. Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe."). For these reasons, any alleged error was harmless and Samol's contentions are rejected.

2. Medical Opinions

Samol also challenges the weight the ALJ gave to opinions. As a colleague of mine recently observed, for claims filed before March 27, 2017, such as this one, the regulations provide that a treating physician's opinion be given controlling weight provided that the opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Lyons v. Berryhill*, Civ. No. 18-1106, 2019 WL 4094701, at * 1 n. 1 (Aug. 29, 2019), *citing*, 20 C.F.R. § 404.1527(c)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) and *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). So "the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Lyons*, 2019 WL 4094701, at * 1 n. 1, *citing*, *Plummer*, 186 F.3d at 429. Given that Samol does not reference any opinions

other than Atwood's, and provides no argument other than what Atwood himself provides, I will limit my review to the ALJ's assessment of Atwood's opinion.

The ALJ gave Atwood's 2017 Medical Source Statement and accompanying letter "some weight." (R. 24) Specifically, she recognized that:

> Dr. Atwood opined the claimant had extreme limitations in dealing with stress and maintaining attention / concentration; moderate limitation understanding, remembering and carrying out simple job instructions; and marked limitations behaving in an emotionally stable manner and demonstrating reliability [and that] the claimant's daytime somnolence was so severe as to prevent work. Dr. Atwood opined the claimant could never lift less than ten pounds, stand and walk less than two hours, never engage in postural activities, and was to avoid exposure to heights and moving machinery.

(R. 25) Yet the ALJ concluded that Atwood's opinions about Samol's extreme limitations were inconsistent with the medical records from the VA Pittsburgh Healthcare System as well as with Samol's reported activities of daily living. (R. 24-25) Inconsistency with other evidence is a valid reason for discounting opinion evidence. *See* 20 C.F.R. §§ 404.1527; 416.927.

Even so, I disagree with the Government's contention that substantial evidence supports the ALJ's finding in this regard.[2] The record does contain statements by medical personnel that Samol's narcolepsy / cataplexy improved once he was put on a course of medication. (R. 796, 809, 812) However, improvement in a condition does not mean that a claimant is symptom-free and capable of work. *See Jones v. Colvin*, Civ. No. 15-1169, 2016 WL 738065, at * 10 (W.D. Pa. Feb. 25, 2016) (stating that "even accepting that Plaintiff's condition improved when he took his medications (as one

---

[2] For instance, the fact that the record lacks a diagnosis related to a cranial nerve condition or of a diagnosis of a chronic headache disorder is not persuasive. Dr. Atwood diagnosed narcolepsy / cataplexy not trigeminal neuralgia or migraines. *See* ECF Docket No. 11, p. 11.

6

would expect), that does not mean that he was totally symptom-free and capable of working when he was properly medicated, as the ALJ's decision seems to suggest."), *citing, Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) ("the work environment is completely different from a home or a mental health clinic, so a doctor's observation that a patient is stable and well controlled with medication during treatment does not support a medical conclusion that the patient can return to work.") (internal quotation marks and brackets omitted). The ALJ does not cite to any evidence suggesting that any improvements because of medication rendered Samol's impairments non-disabling.

Nor does the ALJ cite to any other treating or consulting medical opinion which contradicts Atwood's conclusion that Somal's narcolepsy / cataplexy is of such severity as to prevent him from working. (R. 1285) Atwood explained that Somal's "extreme sleepiness" prevents him from lifting up to 10 pounds, from standing or walking up to 2 hours; from sitting up to 6 hours; from climbing, balancing, stooping, kneeling, crouching and / or crawling; and from reaching, handling, or work requiring dexterity. (R. 1286-87) His condition also requires environmental restrictions and limitations on pushing and pulling and requires him to lie down "frequently" during an 8-hour workday. (R. 186-87) Atwood's conclusions in this regard are supported by other medical opinions of record. For example, Dr. Watters also diagnosed Samol with narcolepsy and cataplexy, noted that he suffered from attacks of cataplexy more than once a day, characterized Samol's daytime somnolence as "extreme" and described it as so severe as to prevent work. (R. 820-21) He noted that Samol frequently falls asleep without warning, has trouble with concentration, has no capacity to work, and has extreme limitations with respect to the ability to deal with work stress, function independently, and maintain attention /

7

concentration. (R. 822-23) Similarly, Dr. Wilps, Samol's treating psychologist, opined that Samol frequently needed to lie down during an 8-hour workday and that, given his narcolepsy / cataplexy, he could not work around heights or moving machinery. (R. 1248-9) He further noted that Samol was extremely limited with respect to the ability to function independently and maintain attention / concentration and that all other occupational, performance and social adjustments otherwise marked as "unlimited" are "subject to extreme episodic impairment due to multiple daily narcolepsy / cataplexy attacks." (R. 1250-51) Wilps commented that Samol "experiences loss of functioning of varying but typically short duration – these occur multiple times / day." (R. 1251) In short, each physician who treated Samol for any length of time offered consistent opinions about Samol's level of impairment.[3]

     As a result, remand is required with respect to the issue of the ALJ's assessment of Atwood's medical opinion. In so remanding, I do not mean to suggest that Samol is necessarily entitled to benefits. Rather, I find that the ALJ's expressed reason for discounting the opinion – inconsistent with the evidence of record – was not persuasive based upon her citations to the record. As stated above, improvement in medical conditions is not tantamount to an ability to engage in substantial gainful employment. Given my holding in this respect, I decline to consider the other issues Samol raised.

---

[3] I recognize that the ALJ cited to the opinions offered by Dr. Jones and Dr. Tater on initial determination. (R. 25)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT GRANT SAMOL )
    Plaintiff, )
)
-vs- ) Civil Action No. 18-1501
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 24th day of October, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED and the Defendant's Motion for Summary Judgment (Docket No. 10) is DENIED. It is further ORDERED that this case be REMANDED for further consideration consistent with the accompanying Opinion.

                        BY THE COURT:

                        /s/ Donetta W. Ambrose
                        Donetta W. Ambrose
                        United States Senior District Judge